UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VARONIS SYSTEMS, INC.,

               Plaintiff,

       -against-

GREGORY JARVIS,

              Defendant.

Case No.: _____

**COMPLAINT**

    Plaintiff Varonis Systems, Inc. ("Varonis" or "Plaintiff"), complaining of Gregory Jarvis ("Jarvis" or "Defendant") as and for its Complaint and Application for Temporary and Permanent Injunctive Relief, alleges as follows:

## PARTIES

    1.    Plaintiff is a Delaware corporation with a principal of business in New York, New York.

    2.    Upon information and belief, Defendant Jarvis is a resident of Salem, Massachusetts.

## JURISDICTION

    3.    This Court has diversity jurisdiction over the pending matter pursuant to 28 U.S.C. § 1332(a) (1) because Defendant and Plaintiff are residents of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

    4.    Venue is properly laid in this court pursuant to 28 U.S.C. §1391(b) (1) because Plaintiff resides in this District and Defendant has consented to personal jurisdiction and venue of the state and federal courts of New York pursuant to the employment agreement giving rise to this action.

## FACTUAL ALLEGATIONS

**A.    Varonis's Business and SaaS Security Solutions**

5.    Varonis is a pioneer in data security and analytics.  Varonis focuses on protecting enterprise data: sensitive files and emails; confidential customer, patient, and employee data; financial records; strategic and product plans; and other intellectual property.

6.    Varonis's data security platform -- which is provided both as on-prem solution, installed on clients' servers, and as a software as a service ("SaaS") solution, installed on Varonis servers -- detect cyber threats from both internal and external actors by analyzing data, account activity, and user behavior; prevents and limits disasters by locking down sensitive and stale data; and efficiently sustains a secure state with automation.

7.    Varonis products address additional important use cases, including data protection, data governance, Zero Trust, compliance, data privacy, classification, and threat detection and response.

8.    The market for SaaS security management solutions is very competitive.  To that end, Varonis acquired Polyrize in or around October 2020, which enabled Varonis to enhance its cyber security product offerings for protecting clients' data stored in the cloud.

9.    Jarvis was lead representative on Varonis's deals and sales initiatives and chief point of contact with clients and prospective clients and business partners, and it was his responsibility cultivate those relationships and convert them into sales of Varonis's products and services, including its SaaS security solutions.

**B.    Defendant Jarvis Joins Varonis and Accepts Post-Employment Obligations to Protect and Prevent the Misuse Varonis's Confidential Business Information**

10.    Varonis employed Jarvis from on or about July 14, 2014, when the Company hired him, until February 6, 2023, when Jarvis resigned and announced his intent to join a competitor,

AppOmni.  Jarvis served in several capacities in the Company's sales organization during his employment at Varonis, most recently in the position of Account Manager.

11.     As a condition of his employment, Jarvis reviewed and accepted, on June 30, 2014, the At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement ("Employment Agreement") as well as the obligations set forth therein.

12.     Among Jarvis's obligations to Varonis, Jarvis is required to immediately provide Varonis with an executed Termination Certification should his employment with Varonis ever end.

13.     The Termination Certification, an executed version of which  Jarvis is supposed to provide Varonis upon his separation, represents that Jarvis, among other things, will honor his continuing post-employment obligations to Varonis, including confirmation that he will refrain from using or disclosing Varonis's confidential information and comply with the non-competition, non-solicitation, and non-interference provisions of the Employment Agreement.

14.     Specifically, the Termination Certification states, in relevant part, the following:

> I further agree that, in compliance with the [Employment Agreement], I will preserve as confidential and will not use or disclose without prior authorization any and all Company Confidential Information and Associated Third Party Confidential Information, including trade secrets, confidential knowledge, data or other proprietary information relating to products, processes, know-how, designs, formulas, developmental or experimental work, computer programs, databases, other original works of authorship, customer lists, business plans, financial information or other subject matter pertaining to any business of the Company or any of its employees, clients, consultants or licensees.
>
> I also agree that for twelve (12) months from this date [of the Termination Certification], I will comply with the non-competition and non-solicitation provisions, as set forth in Paragraph 7 of the [Employment Agreement].

See Employment Agreement § 6 & Exhibit B Termination Certification, attached as **Exhibit A** and **Exhibit B** to the Declaration of Gregory Pomeroy in support of Plaintiff's Motion for Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery ("**Pomeroy Decl.**"), dated January 24, 2023.

15.     The Termination Certification also requires Jarvis to identify his new employer as well as his position there, which information is necessary for Varonis to assess Jarvis's compliance with his post-employment non-disclosure, non-competition, non-solicitation, and non-interference obligations owed to Varonis.

16.     Despite multiple requests and reminders from Varonis, Jarvis has failed and/or refused to provide the Termination Certification, even though electronic metadata indicates that Jarvis has received, accessed, and viewed the Termination Certification several times since his resignation from Varonis.

17.     Relevant here, should Jarvis's employment with Varonis terminate, Jarvis agreed to several restrictions on his employment and activities for one year following the end of his employment with Varonis.  In the event of termination, Jarvis agreed that he <u>may not</u> (i) work for any business that competes with Varonis's business or products, (ii) contact any of Varonis's customers, or (iii) do anything to divert business from Varonis or solicit any party not to conduct or reduce business with the Company, or otherwise interfere with Varonis's relationship with any existing or prospective business relation of the Company.  <u>See</u> Employment Agreement § 7(A)-(B).

18.     In accepting the Employment Agreement, Jarvis recognized that Varonis is engaged in a competitive business, that he would have access to confidential information and client and business relationships that he otherwise would not have, and the use or misuse of such information and relationships to the benefit of any party other than Varonis would disadvantage Varonis and damage the Company immeasurably.

19.     Jarvis acknowledged the valuable nature of Varonis's confidential information and agreed that an injunction is an appropriate remedy to protect such confidential information because

of the harm a breach of the Employment Agreement would cause Varonis.  As such, Jarvis acknowledged the following the statement:

> I AGREE THAT ANY PARTY MAY ALSO PETITION THE COURT FOR INJUNCTIVE RELIEF WHERE EITHER PARTY ALLEGES OR CLAIMS A VIOLATION OF THIS AGREEMENT OR ANY OTHER AGREEMENT REGARDING TRADE SECRETS, CONFIDENTIAL INFORMATION, NON-COMPETITION, NON-SOLICITATION, NON-INTERFERENCE OR OTHER RESTRICTIVE COVENANTS. I UNDERSTAND THAT ANY BREACH OR THREATENED BREACH OF SUCH AN AGREEMENT WILL CAUSE IRREPARABLE INJURY AND THAT MONEY DAMAGES WILL NOT PROVIDE AN ADEQUATE REMEDY THEREFOR AND BOTH PARTIES HEREBY CONSENT TO THE ISSUANCE OF AN INJUNCTION. IN THE EVENT EITHER PARTY SEEKS INJUNCTIVE RELIEF, THE PREVAILING PARTY SHALL BE ENTITLED TO RECOVER REASONABLE COSTS AND ATTORNEYS' FEES.

See Employment Agreement § 12(D).

**C.     Defendant Jarvis's Work at Varonis**

20.     From the beginning of his employment until his resignation, Jarvis was intimately involved in and had knowledge of Varonis's relationships and transactions with clients and prospective clients and key business partners (i.e., third parties that market and/or sell Varonis's technologies and services), the Company's financial information and business strategies, as well as its products and products in development, including Varonis's marketing and sales strategies to advance the Company's products.

21.     At Varonis, Jarvis first served in the position of Channel Manager whose responsibility it was to identify and nurture partner relationships so that Varonis could use those connections to drive sales of the Company's products.  The Channel Manager is responsible for driving and delivering sales leads and converting them into new business.  The Channel Manager works as the primary source for developing partners and growing relationships and is responsible for educating Varonis partners and their sales teams on what Varonis has to offer and how to position Varonis products to the partners' clients.

22.     Almost a year later, in July 2015, Jarvis was promoted to the position of Sales Manager – Channel East, in which capacity he served until December 2019.  In that role, Jarvis managed a team of channel managers for the northeast region of the United States and trained them to identify new business opportunities for Varonis and develop relationships with channel partners to obtain access to the partners' clientele and promote Varonis's products over the products of competitors.  As Sales Manager – Channel East, Jarvis had access to partners all across the northeast region.  Jarvis cultivated relationships with numerous Varonis partners, and being the channel regional manager, Jarvis had access to the most senior stakeholders with partners and most strategic partners in the region.

23.     In December 2019, Varonis became an Account Manager, in which capacity he served until his resignation on February 6, 2023.

24.     As Account Manager, Jarvis assumed a client- and business partner-facing role as the Company's lead on sales initiatives, as well as a linchpin of Varonis's relationships with clients and business partners, which enabled Jarvis's access to and knowledge of the Company's confidential information.

25.     Jarvis has been integral in Varonis's efforts to penetrate the SaaS data security market and expand Varonis's share of the available market in which AppOmni is competing. Through his position as Account Manager, Jarvis had access to and was intimately familiar with, Varonis's clients and prospective clients (including their deal terms, requirements, and timing for opportunities), its business arrangements with partners, business plans, costs and pricing strategies for Varonis's SaaS products, Varonis's products and products in development, and marketing and sales strategies to advance the sale of those products.  This information is highly confidential, and a competitor's access to this information would be immeasurably detrimental to Varonis.

26.     To secure its confidential business information, Varonis invests in and deploys multiple means to manage, control, and restrict access to its systems.  Varonis has layers of systems with complex permission systems that are each managed in a different way.  The Company's security measures restrict the number of people and/or the people who should have access to particular aspects of the Company's business.

27.     Jarvis had access to layers of these systems and knowledge of the confidential information stored in and/or protected by them to enable to him to advance Varonis's business. Jarvis also acquired knowledge of confidential information during the course of performing his duties and contributed to and/or was the source of some of the protected confidential business information during his decade-long employment with Varonis (e.g., derived from leading deals or direct client/prospective client and partner relationships).

28.     As Account Manager, it became Jarvis's responsibility to present and sell the Company's products and services to current and potential clients; establish and maintain current customer relationships by responding to customer requests and managing and resolving customer issues; prospect and identify key decision makers within the targeted leads; pursue leads and referrals resulting from field activity, while maintaining and expanding Varonis's database of contacts within the targeted organizations; prospect or initiate and develop new business by identifying potential clients and users of Varonis's products; perform product demonstrations of Varonis's products and create deal proposals, including presentations to C-Level prospective clients and resellers; and formulate sales strategies.

**Jarvis is Positioned to Misuse His Connections to Varonis's Partner Relationships That Are Critical to Varonis's Competitive Position**

29.     As Account Manager, Jarvis continued to have access to and managed the relationships with the Company's channel partners, a significant source of business for Varonis's

products.  As such, one of Jarvis's paramount responsibilities was to establish and nurture Varonis's relationships with business partners so that they promote or prioritize Varonis's products over the products of Varonis's competitors, including AppOmni.

30.     Channel partners are a significant source of potential clients for Varonis, as they provide the identities of or access to potential clients which Varonis might otherwise not have. Channel partners at times have clients who are in the market for Varonis's products, or they have knowledge of potential clients who might be in the market for Varonis's products.

31.     In other words, a pool of business opportunities are available through channel partners who know what others want and they know who to target for Varonis's products -- and it was Jarvis's responsibility to develop and maintain relationships with channel partners, who may have their own brand value to sway prospective customers, and secure their imprimatur of Varonis's products.

32.     Given the importance of channel partners to the marketing, sale, and placement of Varonis's products, Varonis devoted substantial resources into developing Jarvis's relationship, visibility, and reputation with channel partners.

33.     Jarvis knows how Varonis works to become a partner of choice with channel partners and/or the preferred purveyor of SaaS security management solutions for the partners' clients and potential clients identified by the partners.  If AppOmni were to gain knowledge of and/or access to Varonis's relationships with channel partners and what potential client pools Varonis accesses through specific partners, this would place Varonis's SaaS business in jeopardy because Jarvis could leverage his relationships with those partners, facilitated by Varonis, to encourage them to prioritize or promote AppOmni over Varonis.

**Jarvis's Has Access to, Relationships with, and Knowledge of Wide-ranging Confidential Information Concerning Varonis's Clients and Prospects, As Well As Varonis's Strategies to Cultivate and Maintain Relationships**

34.     Varonis enabled Jarvis's access to the Company's strategic partners and their senior stakeholders to facilitate Jarvis's performance of one of his most critical functions, which was to source new clients and business opportunities and maintain access to them.  To that end, Jarvis built and cultivated relationships with numerous prospects and clients (with the Company's resources) to promote sales to new clients, ensuring exiting clients renew their Varonis licenses and expand their Varonis portfolio to additional products (licenses).

35.     Inherent to this role, Jarvis acquired substantial knowledge of Varonis's clients' business needs and wants, as well as detailed and highly technical information about Varonis's products and product in developments and competitive strategies, the combination of which uniquely empowers Jarvis to damage Varonis's business.

36.     Varonis considers the identities of its customers and equally, if not more important, the deal terms with them, to be highly confidential.  Jarvis is fully familiar with Varonis's clients' pricing sensitivities.  In his capacity as sales lead in Varonis's transactions with prospective and existing customers, Jarvis acquired knowledge of the amounts Varonis's clients paid and/or were willing to pay for products or services.  Similarly, Jarvis is aware of the walk away price point for many prospects.

37.     Jarvis accumulated almost a decades' worth of information concerning the Company's licensing and pricing strategies, including Varonis's costs and what Varonis would be willing to price certain products and features either to secure a new transaction or obtain a specific client's renewal of Varonis's products or services.

38.     Jarvis had significant autonomy as the lead on Varonis's deals to offer discounts on Varonis's products and was aware of the extent and the circumstances under which Varonis could

and/or would offer discounts beyond Jarvis's authority.  With access to Jarvis's knowledge of what Varonis's clients pay and/or are willing to pay, as well as Varonis's pricing strategies and discount structures, AppOmni is able to advantageously price its products to Varonis's customers and prospective customers and undercut Varonis's existing business relationships.

39.    Jarvis also knows when customers contracts with Varonis are scheduled for renewal and what products those customers use, as well as the identities of former customers who no longer use Varonis's products.  As such, Jarvis is uniquely positioned to not only target specific Varonis customers, he also knows specifically the timing of opportunities when clients are available to be poached.

40.    Varonis expended substantial efforts in aggregating and/or developing information about customers and prospective customers' particular needs and preferences, what they are willing to pay, and whether and when opportunities exist to solicit them for new transactions or renewals, and the misuse or disclosure of such information will damage Varonis and erode its position as one of the leaders in data security and analytics.

**Jarvis Has Privileged Access to and Extensive Knowledge of Varonis's Products and Products in Development That He Can Use to Position Competitors' Products Against Varonis, As Well As to Assist Competitors to Identify Market Opportunities and Improve or Develop Features Tailored to Varonis's Clients and Prospects**

41.    By virtue of his position as Account Manager, Jarvis was deeply involved in the sale and development of security products customized for existing and prospective customers. Customers and prospective customers regularly disclosed sensitive, non-public information about their information systems and particular business needs.  With that information, Jarvis and Varonis's sales engineers presented demonstrations of the Company's products tailored to address the customers' specific needs.

42.     As part of this sales process, and among his chief responsibilities as the lead on Varonis's deals, Jarvis educated customers about Varonis's capabilities.  The Company relied on Jarvis's credibility and expertise in Jarvis's data security solutions.  For that reason, Jarvis had access to and knowledge of highly technical information about Varonis's products and product pipeline, as well as the Company's business plans and strategies.

43.     Jarvis, therefore, had privileged access to detailed information about the capabilities of Varonis's products services – indeed, he was responsible for demonstrating the products' functions and had in-depth knowledge technical information to competently address clients and prospects' questions about them.

44.     Jarvis's in-depth knowledge about Varonis's products and how to use them also means he knows the limitations of Varonis's products, which information Jarvis can convey to AppOmni, a Varonis competitor, to strengthen AppOmni's products.  This information is highly confidential and proprietary -- and restricted to select personnel within the Company, including Jarvis.

45.     Besides securing deals with new clients, Jarvis was also responsible for maintaining and cultivating client relationships.  Jarvis acted as the liaison between Varonis and its customers and the channel through which Varonis learned about how clients use and/or for purpose purposes clients use Varonis's data security tools, feedback about the Company's products, technical issues reported by clients, and product features that clients did not use or want and/or would need but did not have.

46.     Jarvis also directly received and had access to information pertaining to scope of the clients and prospective clients' needs that Varonis products and the products of its competitors are able to service.

47.     Jarvis relayed all of this information, channeled to Varonis's engineering and/or technical team, to resolve issues identified by customers as well as strategize and identify functionalities to test, shelve, or develop.

48.     Due to Jarvis's role in securing and maintaining client relationships, so that he could address clients' business needs, Varonis educated Jarvis about the Company's near-term, immediate term, and long-term product roadmap.

49.     Through meetings and other updates, Jarvis was fully apprised of the Company's product pipeline to enable Jarvis to provide an estimate as to whether and when certain products and/or features would be deployed and strategize a response insofar as products or features were not in development.

50.     At the time of his separation from employment, Jarvis had (and continues to have) knowledge of the Company's 12-month product roadmap, at the very least.  The plans Varonis developed for rolling out and promoting Varonis's products remain in effect and are going forward, and the information is highly restricted to select members within the company.

51.     Jarvis is able to use his knowledge about what functionalities clients need, how and/or for what purpose clients use security features, and what capabilities those clients are expected to need as their businesses grow or mature, which he learned solely through his employment with Varonis, for the benefit of AppOmni, for example, by advising AppOmni on what products to develop or features to design to improve upon existing products or fill an existing or anticipated competitive gap.

**As the Nexus Between Varonis and Its Clients and Partners, Jarvis Presents As a Unique Risk Given The Combination of Access to and Knowledge of Varonis's Key Relationships and Restricted, Confidential That is Critical to and Endangers Varonis's Business**

52.     Jarvis acknowledged that the skills he can offer other employers as well as the knowledge that makes him valuable as a sales leader to another business providing data security management tools is based on confidential information generated by Varonis rather than ability, knowledge, or experience that he has independent of Varonis.

> I acknowledge and agree that the Customers did not use, inquire of or been solicited for the Company's services solely as a result of my efforts, and that the efforts of other Company personnel and resources are responsible for the Company's relationship with the Customers. I further acknowledge and agree that the identity of the Customers is not readily ascertainable or discoverable through public sources, and that the Company's list of Customers was cultivated with great effort and secured through the expenditure of considerable time and money by the Company.

See Employment Agreement § 7(B)(1).

53.     Jarvis was the primary face of Varonis for many of the Company's clients and business partners.  This enables Jarvis to position AppOmni to compete against Varonis products and gain a greater share of the market, as well as to leverage his credibility as a former insider and exploit his knowledge about the purported shortcomings of Varonis's products to the advantage of AppOmni.

54.     Jarvis's in-depth, technical knowledge of the strengths and weaknesses of Varonis's products uniquely positions Jarvis to damage the Company's business and competitive advantage.  Jarvis can identify what Varonis's products can and cannot do and how Varonis positions itself against competitors, including AppOmni, as well as guide AppOmni on selling against Varonis and developing AppOmni's products to exploit Varonis's limitations.

55.     Jarvis demonstrated the risk he poses to undermining the Company's products and diverting business away from Varonis when, on November 9, 2022, Jarvis erroneously informed a client that Varonis's products did not have a certain capability and Varonis had no plans to develop that capability.  The risk that such misinformation may dissuade a customer's new or

continued business with Varonis is heightened by the supposed authority Jarvis has from formerly representing Varonis's products.

56.     Coupled with Jarvis's relationships with Jarvis's clients and partners, Jarvis has the ability to compound the damage he is causing or will cause Varonis by developing AppOmni's nascent sales teams and sales capabilities, in competition with Varonis, using training and confidential business information he acquired from his employment at Varonis.

**D.     Defendant Jarvis's Resignation to Join a Direct Competitor**

57.     On February 6, 2023, Jarvis submitted his resignation from Varonis with two weeks' notice.

58.     When Jarvis informed his direct manager, Jared Hale, Regional Sales Director, that he was resigning, Mr. Hale inquired where Jarvis was going.  Jarvis answered that he would be joining AppOmni in the position of Account Executive.  Jarvis also indicated that his employment with AppOmni would begin in about two weeks.  In response, Mr. Hale advised Jarvis that AppOmni is a competitor of Varonis.

59.     The functions of an Account Executive at AppOmni are similar to the functions of an Account Manager at Varonis.

60.     Mr. Hale informed senior management, including Gregory Pomeroy, Vice President of North American Sales, about Jarvis's intent to join AppOmni.  Mr. Pomeroy decided to immediately exit Jarvis on February 6, 2023, in lieu of Jarvis's two weeks' notice, given the risk posted to Varonis's business from Jarvis's continued access to the Company's highly confidential information.

61.     The next day, on February 7, 2023, Varonis's in-house legal counsel, emailed Jarvis a letter reminding him about his continuing post-employment obligations to Varonis under the

Employment Agreement and is bound by non-competition, non-solicitation, and non-interference obligations for one year after his separation, as well as that Jarvis is prohibited from disclosing or using Varonis's confidential and sensitive business information other than for Varonis's benefit.

62.    The February 7, 2023 letter also informed Jarvis that Varonis considers AppOmni to be a competitor and that Jarvis's employment with AppOmni constitutes a breach of the Employment Agreement, as well as threatens the misappropriation of Varonis's confidential information.

63.    Varonis asked that Jarvis confirm to Varonis, by February 12, 2023, his intent to refrain from commencing employment with AppOmni.

64.    Separately, on February 8, 2023, Varonis Human Resources emailed Jarvis enclosing Varonis's acknowledgement of Jarvis's resignation, which again reminded Jarvis about his post-employment obligations under the Employment Agreement.

65.    Additionally, on February 8, 2023, Varonis sent Jarvis a copy of the Termination Certification, which he originally received upon signing the Employment Agreement, via DocuSign for Jarvis's completion.

66.    According to DocuSign's metadata, Jarvis viewed the document on February 14, 2023 at approximately 5:58 p.m. but did not sign the certification.

67.    Jarvis again viewed the Termination Certification on February 21, 2023 at approximately 10:44 a.m. but did not sign the certification, according to DocuSign's metadata.

68.    According to Jarvis's LinkedIn Profile, Jarvis to date identifies Varonis as his employer.

69.    Upon information and belief, Jarvis's employment with AppOmni commenced or will commence imminently.

**D.      AppOmni's Business**

70.      Founded in 2018, AppOmni styles itself as the "leader in SaaS Security".

71.      AppOmni is a relatively new entrant to the market of SaaS security management solutions, and it is a direct competitor to Varonis in this area.

72.      AppOmni also offers various tools and functions for organizations to secure data in their SaaS environments, including functions that are similar to those available from Varonis's products.

73.      Many prospective customers who are looking for the functions and services provided by Varonis would also look at AppOmni's products that provide similar functions or alternative measures to Varonis's security management tools.

**E.      Defendant Jarvis's Employment at AppOmni in Violation of Covenants**

74.      Varonis did not consent to Jarvis's employment with AppOmni or otherwise release Jarvis of any of his obligations under the Employment Agreement.

75.      Jarvis will be joining or has joined AppOmni in the position of Account Executive, in which capacity, upon information and belief, Jarvis will be performing many of the same functions as he performed for Varonis as Account Manager – namely, to drive sales of SaaS security solutions, albeit now in the service of AppOmni products against which Varonis (and Jarvis, until mere weeks ago) competes.

76.      To date, Jarvis has provided no reply to Varonis's February 7, 2023 letter.  Jarvis has also provided no written notification of the identity of his new employer or a general description of his duties, pursuant to the Employment Agreement.

77.      Jarvis has not confirmed his intent to honor his post-employment obligations to Varonis.

78.     In executing the Employment Agreement, Jarvis acknowledged and agreed that Varonis was and is engaged in a competitive business; Jarvis obtained knowledge of and access to Varonis's confidential information, as well as developed relationships with Varonis's clients and business partners, by virtue of his position, training, and experience with the Company; and the disclosure or improper use of the Varonis's confidential information would seriously damage the Company and place Varonis at a serious competitive disadvantage.

> I acknowledge and agree that (1) the business in which the Company is engaged is intensely competitive, (2) my employment by the Company will require me to have access to, and knowledge of, Company Confidential Information, which is of vital importance to the success of the Company, (3) I will derive significant value from the Company's agreement to provide me with Company Confidential Information to enable me to optimize the performance of my duties to the Company, (4) the disclosure or improper use of any Company Confidential Information could place the Company at a serious competitive disadvantage and could do it serious damage, financial and otherwise, (5) I will develop relationships with clients and business partners at the time and expense of the Company, (6) by my training, experience and expertise, my services to the Company are extraordinary, special and unique, (7) my fulfillment of the obligations contained in this Agreement is necessary to protect the Company Confidential Information and, consequently, to preserve the value and goodwill of the Company, (8) the time, geographic and scope limitations of my restrictive covenant obligations are fair and reasonable in all respects, especially in light of the Company's need to protect Company Confidential Information and the international scope and nature of the Company's business, and (9) I will not be precluded from gainful employment by abiding by the restrictions in this Agreement.

Employment Agreement § 7(C).

**F.     Imminent Irreparable Harm**

79.     Jarvis's duties and responsibilities on behalf of AppOmni by its nature will result in Jarvis violating the Employment Agreement, and inevitably using or disclosing Varonis's confidential business information and business plans.

80.     Jarvis will occupy a similar position at AppOmni as he occupied at Varonis, performing similar functions, and similarly responsible for driving sales of SaaS data security solutions, including those against which he used to compete.

81.     If Jarvis is allowed to continue his employment with AppOmni in violation of the Employment Agreement, it will cause irreparable harm to Varonis.   Once lost, Varonis's confidential and trade secret information cannot be restored.  The nature of the losses that would be caused over time if Varonis's confidential and trade secret information were disclosed to AppOmni or used to help it in competing with Varonis and/or developing a competing business, cannot be fully quantified or fully measured.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

82.     Varonis repeats and realleges each and every allegation set forth in paragraphs 1 through 81 hereof as if fully set forth herein.

83.     Varonis has in place agreements with Jarvis, specifically the Employment Agreement, which impose restrictions on Jarvis's acceptance of employment with a competitor of Varonis.

84.     By accepting and commencing employment with AppOmni, a competitor of Varonis meaning of the Employment Agreement, before the end of the one-year restriction period, and in a job which, on information and belief, would require the violation of Jarvis's ongoing contractual obligation to protect and not use or disclose the confidential information about Varonis's business, Jarvis is in breach of Employment Agreement.

85.     By accepting and beginning employment with AppOmni before the expiration of the non-compete period, and in a manner which violated his obligations under Section 7 of the Employment Agreement, Jarvis has or will provide services to a competitor and/or engage in

activities that would compete with the business and products of Varonis in breach of the Employment Agreement.

86.     As a result of such conduct, and unless Jarvis is enjoined from continuing such conduct and from remaining employed with AppOmni, Varonis has suffered and will continue to suffer irreparable and incalculable harm, including the loss of proprietary and confidential information for which it can never be compensated. No adequate remedy at law exists for such a breach.

87.     By virtue of his conduct, Jarvis has breached his obligations under the Employment Agreement and should be required to disgorge all sums and benefits that he received from breaching the Employment Agreement.

## REMEDY SOUGHT

WHEREFORE, Varonis Systems, Inc. respectfully requests that judgment be made and entered against Gregory Jarvis as follows:

(1)     AS TO ALL CAUSES OF ACTION, an award granting Varonis monetary damages, the precise amount to be determined at trial including but not limited to the disgorgement of all benefits and sums provided to Jarvis under the Employment Agreement;

(2)     Preliminary and permanent injunctions, whereby Jarvis would be enjoined from:

(a)     continuing employment with or otherwise providing services to AppOmni, or any parent, subsidiary or affiliate corporation thereof, through February 6, 2024, extended to include any period of time in which he has been employed by AppOmni in any position involving or relating to his prior duties and responsibilities with Varonis;

(b)      managing, controlling, investing in, advising, working or consulting for, or otherwise joining, participating in or affiliating with, any business whose business or products are in competition with or otherwise similar to Varonis's business;

(c)      contacting, or causing to be contacted, or engaging in any form of communication with any persons or entities that have used, inquired or been solicited for Varonis's services at any time during the two-year period preceding the termination of Jarvis's employment with the Company, i.e., from February 6, 2021 to February 6, 2023 ("Customer") for the purpose of (i) conducting business that is competitive or similar to that of Varonis or (ii) disadvantaging Varonis's business in any way;

(d)      soliciting, encouraging, or attempting to solicit or encourage any employee or contractor of Varonis, or any such individuals who either coincident with or within twelve months before Jarvis's termination of employment with Varonis terminated their employment or engagement with Varonis to (i) terminate such work relationship with Varonis or (ii) be employed by or provide services to any person or entity other than Varonis;

(e)      hiring, employing, or engaging any employee or contractor of Varonis, or any such individuals who either coincident with or within twelve months before Jarvis's termination of employment with Varonis terminated their employment or engagement with Varonis, to work for a person or entity other than Varonis;

(f)      doing anything or attempting to do anything to discredit or otherwise injure the reputation or goodwill of Varonis;

(g)     soliciting, inducing, encouraging, or attempting to solicit, induce, or encourage, any party or prospective counterparty, including, but not limited to, any joint venture, supplier, vendor, contractor, advertiser, customer, employee, distributor, manufacturer, or any other existing or prospective professional or business relation of Varonis to (i) not conduct business with Varonis, (ii) divert away any business from Varonis, or (iii) cease, limit, or reduce the level of business conducted between such business relation and Varonis;

(h)     interfering or attempting to interfere with Varonis's relationships with any party or existing or prospective counterparty, including, but not limited to, any joint venture, supplier, vendor, contractor, advertiser, customer, employee, distributor, manufacturer, or any other existing or prospective professional or business relation of Varonis;

(i)     possessing, using, disclosing, or disseminating any confidential data or trade secrets belonging to Varonis that were created, discovered, used or tested, or being developed, by Varonis during Jarvis's employment there, unless generally known in the trade or industry in which Varonis is engaged or ascertained from public or published information; and

(j)     any other action in violation of Defendant Jarvis's contractual obligations or fiduciary duties owed to Varonis.

(3)     Declaratory judgment that Defendant Jarvis breached the Employment Agreement and that, pursuant to Section 12(D) thereunder, Varonis is entitled to recover its attorneys' fees, costs and expenses incurred in enforcing the Employment Agreement;

(4)     Attorneys' fees;

(5)     Costs of suit, pre-judgment and post-judgment interest in the maximum amounts

allowed by law;

(6)     Exemplary damages in a sum to be determined by the Court and finders of fact in

an amount reasonable and necessary to punish Medio for his willful and wrongful

conduct and to deter future misconduct; and

(7)     Judgment granting Plaintiff such other and further relief as the Court may deem

just, equitable, and proper.


Date:   February 27, 2023
        New York, New York

                                        /s/
                                        _____
                                        A. Michael Weber
                                        Shawn M. Clark
                                        Gary Moy
                                        LITTLER MENDELSON, P.C.
                                        900 Third Avenue
                                        New York, New York 10022.3298
                                        212.583.9600

                                        *Attorneys for Plaintiff Varonis Systems, Inc.*