UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VARONIS SYSTEMS, INC.,

                Plaintiff,

        -against-

GREGORY JARVIS,

                Defendant.

Civil Action No.:

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND EXPEDITED DISCOVERY**

---

A. Michael Weber, Esq.
Shawn M. Clark
Gary Moy, Esq.
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York 10022.3298
212.583.9600

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ........................................................................................... I

STATEMENT OF FACTS ................................................................................................. 3

ARGUMENT ....................................................................................................................... 3

I.    PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION .......................................................................... 3

    A.    Varonis Will Suffer Irreparable Harm Absent Injunctive Relief .......................... 3

        1.    Jarvis admits that a breach of the restrictive covenants inflicts
irreparable harm ........................................................................................ 4

        2.    Jarvis will inevitably disclose confidential and trade secret
information to a direct competitor ............................................................ 5

        3.    Jarvis's use and disclosure of Jarvis's confidential information will
inflict irreparable harm .......................................................................... 10

    B.    Varonis Is Likely to Succeed on the Merits and, At The Very Least, Can
Demonstrate a Sufficient Serious Question Going to the Merits to Make
Its Claims Fair Grounds For Litigation ................................................................ 12

        1.    Choice of Law ......................................................................................... 12

        2.    Breach of Contract ................................................................................. 12

            a.    Jarvis breached his Employment Agreement .............................. 13

            b.    The Employment Agreement is enforceable ............................... 15

                (1)    The Employment Agreement is reasonable in scope
and duration ................................................................... 15

                (2)    The Employment Agreement protects Varonis's
legitimate business interest ............................................. 16

                (3)    The Employment Agreement does not cause undue
hardship and balancing of the equities favor
enforcement .................................................................... 19

            c.    Granting injunctive relief is in the public interest ...................... 21

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

II.    VARONIS SHOULD NOT BE REQUIRED TO POST BOND.................................... 22

III.   THE COURT SHOULD GRANT EXPEDITED DISCOVERY ................................... 23

CONCLUSION........................................................................................................................ 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Andino v. Fischer,
 555 F. Supp. 2d 418 (S.D.N.Y. 2008)......................................................................3

Avaya, Inc. v. Ali,
 No. 12-10660 (DJC), 2012 WL 2888474 (D. Mass. July 13, 2012)......................................22

BDO Seidman v. Hirshberg,
 93 N.Y.2d 382 (1999) ...............................................................................17

Cardwell v. Thermo Fischer Scientific,
 No. 09 Civ 7809, 2010 WL 3825711 (S.D.N.Y. Sept. 23, 2010).........................................16

Cortland Line Holdings LLC v. Lieverst,
 No. 18 CV 307, 2018 WL 8278554 (N.D.N.Y. Apr. 6, 2018) ..............................................19

In re Coudert Bros. LLP,
 673 F.3d 180 (2d Cir.2012)..........................................................................12

DAG Jewish Directories, Inc. v. Y & R Media, LLC,
 No. 09 Civ. 7802 (RJH), 2010 WL 46016 (S.D.N.Y. Jan. 7, 2010)......................................23

Devos, Ltd. v. Record,
 No. 15 CV 6916 (AYS), 2015 WL 9593616 (E.D.N.Y. Dec. 24, 2015) ................................17

Diesel Props S.r.l. v. Greystone Bus. Credit II LLC,
 631 F.3d 42 (2d Cir. 2011)..........................................................................12

Doctor's Assocs., Inc. v. Stuart,
 85 F.3d 975 (2d Cir.1996)..........................................................................22

Estee Lauder Cos. v. Batra,
 430 F. Supp. 2d 158 (S.D.N.Y. 2006)....................................................4, 8, 10, 15

ExpertConnect, LLC v. Fowler,
 No. 18 Civ. 4828 (LGS), 2019 WL 3004161, 2019 U.S. Dist. LEXIS 114931
 (S.D.N.Y. July 10, 2019) ............................................................................6

Gen. Sec., Inc. v. Commer. Fire Sec. Inc.,
 No. 17 CV 1194 (DRH) (AYS), 2018 WL 3118274, 2018 U.S. Dist. LEXIS
 105794 (E.D.N.Y. June 25, 2018) ...................................................................6

Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.,
 922 F. Supp. 2d 435 (S.D.N.Y. 2013), *aff'd,* 764 F.3d 210 (2d Cir. 2014)..............................3

IBM v. Papermaster,
    No. 08 Civ. 9078 (KMK) 2008 WL 4974508 (S.D.N.Y. Nov. 21, 2008) .......................11, 18

IDG USA, LLC v. Schupp,
    416 F. App'x 86 (2d Cir. 2011) ........................................................................................3

Inflight Newspapers, Inc. v. Magazines In-Flight, LLC,
    990 F. Supp. 119 (E.D.N.Y. 1997) .................................................................................9, 18

Intertek Testing Servs., N.A., Inc. v. Pennisi,
    443 F. Supp. 3d 303 (E.D.N.Y. 2020) ...............................................................................21

Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.,
    323 F. Supp. 2d 525 (S.D.N.Y. 2004)..............................................................................3, 10

JTH Tax, Inc. v. Sawhney,
    No. 19 Civ. 4035, 2019 WL 3051760 (S.D.N.Y. July 11, 2019) ...........................................22

Lakeview Tech., Inc. v. Robinson,
    446 F.3d 655 (7th Cir. 2006) ............................................................................................6

Locke v. Tom James Co.,
    No. 11 Civ. 2961, 2013 WL 1340841 (S.D.N.Y. Mar. 25, 2013) ...........................................16

Marsh USA Inc. v. Schuhreimen,
    183 F. Supp. 3d 529 (S.D.NY. 2016)..................................................................................20

MasterCard Int'l Inc. v. Nike, Inc.,
    164 F. Supp. 3d 592 (S.D.N.Y. 2016)................................................................................12

Medtech Prods. Inc. v. Ranir, LLC,
    596 F. Supp. 2d 778 (S.D.N.Y. 2008).................................................................................5

Mercer Health & Benefits LLC v. DiGregorio,
    307 F. Supp. 3d 326 (S.D.N.Y. 2018)...........................................................................3, 17, 21

Mickey's Linen v. Fischer,
    No. 17 C 2154, 2017 WL 3970593 (N.D. Ill. Sept. 8, 2017)...............................................6, 10

Nebraskaland, Inc. v. Brody,
    No. 09 Civ. 9155 (DAB), 2010 WL 157496 (S.D.N.Y. Jan. 13, 2010)....................................23

North Atl. Instruments, Inc. v. Haber,
    188 F.3d 38 (2d Cir. 1999)...........................................................................................4, 15

Oliver Wyman, Inc. v. Eielson,
    282 F. Supp. 3d 684 (S.D.N.Y. 2017) ................................................................................16

Oneida Grp., Inc. v. Steelite Int'l U.S.A., Inc.,
    No. 17 CV 957 (ADS) (AKT), 2017 U.S. Dist. LEXIS 206717 (E.D.N.Y. Dec.
    15, 2017) .................................................................................................................5

Payment Alliance Int'l, Inc. v. Ferreira,
    530 F. Supp. 2d 477 (S.D.N.Y. 2007)......................................................................9

Tesla Wall Sys, LLC v. Related Cos., L.P.,
    No. 17 Civ. 5966 (JSR), 2017 U.S. Dist. LEXIS 207932 (S.D.N.Y. Dec. 15,
    2017) ........................................................................................................................5

Title Ins. Co. v. Cohen,
    173 F.3d 63 (2d Cir. 1999)......................................................................3, 4, 10, 17

Uni-World Capital, L.P. v. Preferred Fragrance, Inc.,
    73 F. Supp. 3d 209 (S.D.N.Y. 2014)..............................................10, 11, 19, 23

Vendavo v. Long,
    397 F. Supp. 3d 1115 (N.D. Ill. 2019) ........................................................5, 6, 7, 11

Village of Cannon v. Bankers Trust Co.,
    920 F. Supp. 2d 520 (S.D.NY. 2006)....................................................................12

Weichert Co. of Penn. v. Young,
    2007 WL 4372823 (Del. Ch. Dec. 7, 2007)..........................................................16

## PRELIMINARY STATEMENT

Plaintiff Varonis Systems, Inc. submits this memorandum of law in support of its motion for a temporary restraining order, preliminary injunction, and expedited discovery.  As discussed below, restrictions on Defendant Gregory Jarvis's post-employment activities, for one year only, is appropriate and necessary to protect Varonis's legitimate business interests and proprietary information.  An injunction is essential to protect Varonis's confidential information and ensure that Jarvis will not be working for the same products that he worked against while employed by Varonis, in violation of his continuing post-employment non-disclosure, non-competition, non-solicitation, and non-interference obligations to Varonis.

Jarvis is bound by the Employment Agreement he signed as a condition of his employment, including its restrictive covenants.  The agreement bars Jarvis from working for any employer whose business or products compete with Varonis, for one year after his separation, from soliciting any of Varonis's clients or prospects identified or contacted by Varonis, and from doing anything to interfere with Varonis's business or its relationships.  A breach of any of these restrictions necessarily entails Jarvis's breach of the covenant prohibiting Jarvis from disclosing or using Varonis's confidential information for the benefit of anyone other than Varonis.

Varonis charged Jarvis with maintaining and cultivating client and partner relationships to drive sales of Varonis's data security tools -- and, significant here, Jarvis has been central to Varonis's efforts to penetrate and expand its share of the Software-as-a-Service ("SaaS") data security market.  As the linchpin of Varonis's relationships with clients and business partners, coupled with his dual roles as Account Manager and manager of Channel Managers, Jarvis had access to and wide-ranging knowledge of the Company's restricted confidential customer

information, business plans and strategies, and information about Varonis products and products in development.

Jarvis, for example, has comprehensive knowledge about Varonis clients' deal terms and Varonis's pricing strategies and is intimately familiar with the strengths and limitations of Varonis products and the features most popular with Varonis clients and potential clients.  As such, Varonis became alarmed when Jarvis announced his resignation and intent to join a competitor, AppOmni, whose business is centered on providing SaaS security management solutions that are similar to and compete with some of Varonis's products and services -- in the equivalent position performing the same or substantially similar functions.

It is hard to imagine a clearer violation of Jarvis's specific and unambiguous obligations under his Employment Agreement.  AppOmni essentially offers nothing but SaaS security management solutions.   Unless enjoined, Jarvis inevitably will use or disclose Varonis's confidential information to benefit a Varonis competitor, such as helping the competitor price its products against Varonis (e.g., based on his knowledge of the Company's discounting practices and clients' pain points) or improve the competitor's products or their functionalities (e.g., based on customer feedback and data on customer usage).   Compounding the danger to Varonis's business from Jarvis's employment with AppOmni, Jarvis is also familiar with Varonis's competitive gaps and can use that knowledge to leverage years' long relationships with key partners (developed with Varonis's resources) to promote AppOmni's product over Varonis, as well as strengthen the selling pitch for AppOmni to advance the products against which Jarvis competed just weeks ago.

Varonis is entitled to an order barring Jarvis from working for AppOmni for the year as specified in the Employment Agreement, i.e., until February 6, 2024.  Absent a restraining order, Varonis has suffered and will continue to suffer irreparable harm in the form of lost customer and

2

business relationships, goodwill, and other irreparable injury for which there is no adequate monetary remedy. Accordingly, Varonis respectfully requests that the Court grant the motion for a temporary restraining order, preliminary injunction, and expedited discovery.

## STATEMENT OF FACTS

Plaintiff respectfully refers the Court to Plaintiff's Complaint filed on February 24, 2023, as well as the Declaration of Gregory Pomeroy, dated February 24, 2023, and Declaration of Dana Shahar (and exhibits attached thereto), dated February 24, 2023, for a recitation of Plaintiff's factual allegations, which are incorporated by reference herein.

## ARGUMENT

**I.    PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

"In the Second Circuit, a plaintiff seeking a preliminary injunction must establish: '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth., 922 F. Supp. 2d 435, 439 (S.D.N.Y. 2013), aff'd, 764 F.3d 210 (2d Cir. 2014). The same standard applies to an application for a temporary restraining order. See Andino v. Fischer, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008).

### A.    Varonis Will Suffer Irreparable Harm Absent Injunctive Relief

"To establish irreparable harm, a plaintiff must establish both that an injury is likely absent the injunction and that the injury cannot be adequately remedied with money damages." IDG USA, LLC v. Schupp, 416 F. App'x 86, 88 (2d Cir. 2011). Irreparable harm flows from a former employee's breach of a restrictive covenant. See Title Ins. Co. v. Cohen, 173 F.3d 63, 69 (2d Cir. 1999) ("it would be very difficult to calculate monetary damages that would successfully redress

the loss of a relationship with a client that would produce an indeterminate amount of business in years to come"); Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc., 323 F. Supp. 2d 525, 532 (S.D.N.Y. 2004); Mercer Health & Benefits LLC v. DiGregorio, 307 F. Supp. 3d 326, 347 (S.D.N.Y. 2018) ("It is well established in this Circuit that the loss of client relationships and customer goodwill that results from the breach of a non-compete clause generally constitutes irreparable harm."). Varonis will suffer irreparable harm without injunctive relief.

### 1. Jarvis admits that a breach of the restrictive covenants inflicts irreparable harm

Notably, Jarvis explicitly acknowledged that his breach of the restrictive covenants set forth in the Employment Agreement, inflicts irreparable harm to Varonis. More specifically, Jarvis acknowledged that the restrictive covenants were "necessary to protect the Company Confidential Information." See Employment Agreement § 7(C), attached as Exhibit A to the Declaration of Gregory Pomeroy in support of Plaintiff's Motion for a Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery ("Pomeroy Decl."). As such, "any breach of threatened breach of such an agreement will cause irreparable injury and [ ] money damages will not provide an adequate remedy." See Employment Agreement § 12(D). Courts have found acknowledgement of this type to warrant a finding of irreparable harm and issuance of injunctive relief. See North Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 49 (2d Cir. 1999) (finding irreparable harm and relying, in part, that defendant "acknowledged in his [e]mployment [a]greement that a breach of the confidentiality clause would cause 'irreparable injury' to [plaintiff]"); Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 69 (2d Cir. 1999) (upholding injunction where the underlying contract conceded that, in the event of a breach, plaintiff would be entitled to injunctive relief); Estee Lauder Cos. v. Batra, 430 F. Supp. 2d 158, 174 (S.D.N.Y. 2006).

### 2. Jarvis will inevitably disclose confidential and trade secret information to a direct competitor

Even without Jarvis's concession that a breach or *threatened* breach of the Employment Agreement constitutes irreparable harm to Varonis, the information that Varonis seeks to prevent Jarvis from (mis)using or disclosing constitutes confidential and/or trade secret information that courts have long recognized as warranting the courts' protection via injunctive relief. Jarvis's breach of the restrictive covenants endangers several categories of Varonis's protectible interests, including, but not limited to, the following:

- Financial and business information, such as long-term plans, sales and marketing strategies, profit margins, pricing strategies, sales reports pertaining to the revenue generated by customers and/or Varonis's products, projects that Varonis working on. See Medtech Prods. Inc. v. Ranir, LLC, 596 F. Supp. 2d 778, 804 (S.D.N.Y. 2008) ("strategic information regarding price, distribution, and marketing; brand strategies; and confidential business relationships, have been found to constitute trade secrets"); Pomeroy Decl. ¶¶ 21-23, 30, 32-33, 39; see also Tesla Wall Sys, LLC v. Related Cos., L.P., No. 17 Civ 5966 (JSR), 2017 U.S. Dist. LEXIS 207932, at *24 (S.D.N.Y. Dec. 15, 2017) (internal pricing information is protectible); Oneida Grp., Inc. v. Steelite Int'l U.S.A., Inc., No. 17 CV 957 (ADS) (AKT), 2017 U.S. Dist. LEXIS 206717, at *7 (E.D.N.Y. Dec. 15, 2017) (business strategy, market strategy, product margins and costs, and customer sales forecasting are trade secrets); Vendavo v. Long, 397 F. Supp. 3d 1115, 1135 (N.D. Ill. 2019) (financial information, including "sales pipelines" and "sales revenue reports" are trade secrets);

- Proprietary methods and formulas, such as composition and formulations of products and products in development. See Pomeroy Decl.at ¶¶ 22, 25-30, 36-38; Tesla Wall Sys., 2017 U.S. Dist. LEXIS 207932, at *24 (work product, research, and engineering

designs are trade secrets); Vendavo, 397 F. Supp. 3d at 1132 (information produced by plaintiff's efforts to identify and solve pricing issues for clients is trade secret);

- Customer information, such as customer-specific proposals or marketing strategy, products requested or purchased by specific customers, revenue generated by customer's purchases. See Pomeroy Decl. at ¶¶ 22-25, 27-29, 31, 35-36; Oneida, 2017 U.S. Dist. LEXIS 206717, at *7 (expected pricing of customer-specific designs and customer-specific account strategies are trade secrets); see also Vendavo, 397 F. Supp. 3d at 1132 (customer-specific information, including "pain points" and "solutions developed" for clients are trade secrets.); Mickey's Linen v. Fischer, No. 17 C 2154, 2017 WL 3970593, at *9 (N.D. Ill. Sept. 8, 2017) (customer purchasing preferences, contract terms, pricing, expirations, and renewal terms and discounts are trade secrets);

- Customer lists. See Pomeroy Decl. ¶¶ 17-19, 22-24, 35; ExpertConnect, LLC v. Fowler, No. 18 Civ. 4828 (LGS), 2019 WL 3004161, 2019 U.S. Dist. LEXIS 114931, at *15-16 (S.D.N.Y. July 10, 2019) (client lists and client preferences are trade secrets); Gen. Sec., Inc. v. Commer. Fire Sec. Inc., No. 17 CV 1194 (DRH) (AYS), 2018 WL 3118274, 2018 U.S. Dist. LEXIS 105794, at *13  (E.D.N.Y. June 25, 2018) (customer lists can constitute trade secrets); Lakeview Tech., Inc. v. Robinson, 446 F.3d 655, 656 (7th Cir. 2006) (plans, pricing and customer lists were considered trade secrets); Vendavo, 397 F. Supp. 3d at 1134 (names and contact information for customers, including identities of decision makers, are trade secrets if kept secret); Mickey's Linen, 2017 WL 3970593, *9 (customer list identifying top customers, highest revenue producing customers, are trade secrets).

6

The aforementioned categories of information are not publicly known and have substantial commercial value to Varonis.  See Pomeroy Decl. ¶¶ 14-16.  Through Jarvis, a competitor with Varonis's confidential information could improve products or develop new products to fill a capability and/or competitive gap based on clients and prospects' feedback (which was obtained through Varonis's collective efforts); target Varonis's customers and sales channels; develop products and design offerings tailored to customers' uses; and undermine Varonis's product pricing -- all of which damages Varonis's competitive advantage.  See id. ¶¶ 26-28, 35-36, 39. 56. With knowledge of information entirely internal to Varonis, Jarvis is in a position to design or participate in the design of product offerings and sales initiatives for AppOmni's benefit, i.e., to induce clients and prospects to forego or reduce business with Varonis.  Similarly, Jarvis is especially equipped to leverage his years' long relationships with key partners and stakeholders to persuade them, using his knowledge about the Company's business and products, to prioritize or promote AppOmni or its products over Varonis.  See id. ¶¶ 18, 21, 48, 58.

Varonis has engaged in reasonable efforts to maintain the secrecy of its confidential and trade secret information, including establishing layers of complex security systems, deploying confidentiality agreements, and restricting access to Varonis's products, customer information, and business plans to select personnel.  See Vendavo, 397 F. Supp. 3d at 1136 (employer took reasonable efforts to keep information secret by "implement[ing] technological security" such as limiting access to information, requiring employees to sign non-disclosure agreements, and training employees on security); Pomeroy Decl. ¶¶ 14-15.  AppOmni's employ of Jarvis would neutralize Varonis's security measures.  Id. ¶ 16.

Courts have recognized that a former employee, whether *inadvertently or not*, under certain circumstances may directly or indirectly use or disclose a former employer's confidential trade secret information.  "Even where a trade secret has not been disclosed, irreparable harm may be

found based upon a finding that trade secrets will inevitably be disclosed, where ... the movant competes directly with the prospective employer and the transient employee possesses highly confidential or technical knowledge concerning [] marketing strategies, or the like."). Estee Lauder Cos. v. Batra, 430 F. Supp. 2d 158, 174 (S.D.N.Y. 2006) (quoting EarthWeb, Inc. v. Schlack, 71 F. Supp. 2d 299, 309 (S.D.N.Y. 1999)). The risk of Jarvis's inevitable disclosure of confidential and trade secret information is particularly heightened here because Jarvis is servicing Varonis' direct competitor on whose behalf Jarvis is advancing competing products on which he worked for Varonis and acquired confidential information.

If Jarvis is allowed to commence or continue his employment at AppOmni in a position that is the equivalent of his former position at Varonis, performing functions that is equivalent to Jarvis's former position as Account Manager -- promoting AppOmni's SaaS security management solutions (which he competed against mere weeks ago) against Varonis's SaaS security management solutions (which Jarvis promoted against his future self and others) -- it is impossible for Jarvis to do anything but compete against Varonis in the service of AppOmni, in violation of his non-disclosure, non-competition, non-solicitation, and non-interference restrictive covenants and use the information and training he received at Varonis. See Pomeroy Decl. ¶¶ 52-53.

Jarvis had substantial involvement in Varonis's efforts to penetrate the SaaS data security market and expand Varonis's share of the available market in which AppOmni is now competing. See id. ¶ 13. Jarvis had access to and was intimately familiar with, among other things, Varonis's clients and prospective clients (including their deal terms, requirements, and timing for opportunities), its business arrangements with partners, business plans, costs and pricing strategies for Varonis's SaaS products, Varonis's products and products in development, and marketing and sales strategies to advance those products – against which he is now competing on AppOmni's behalf. See id. ¶¶ 22-29. Jarvis's knows what Varonis's clients pay and/or are willing to pay and

when their product contracts or licenses are up for renewal, as well as Varonis's pricing strategies and discount structures.  See id. ¶¶ 31-33, 39.  Jarvis also knows what Varonis's products can and cannot do and how Varonis positions itself against competitors like AppOmni.  See id. ¶¶ 31-35.

Jarvis cannot simply remove Varonis's confidential information from his head where it had been accumulating for almost a decade.  It is impossible for Jarvis to wipe from his memory Varonis's pricing for a particular Varonis product or service that a Varonis client paid when, on behalf of AppOmni, Jarvis attempts to pitch and competitively price a similar competing AppOmni product whether to a new prospect or to the same Varonis client who is either renewing Varonis's product or service or selecting an alternative option.  See id. ¶ 16.  The feat is even more implausible particularly when Jarvis may have had years' long relationship with that client, which he had been tasked with nurturing for Varonis's benefit, and also may have been Varonis's sales lead on that expiring transaction.  See Inflight Newspapers, Inc. v. Magazines In-Flight, LLC, 990 F. Supp. 119, 125 (E.D.N.Y. 1997) (disclosure likely where defendant "provide[d] *an identical product* to its customers as previously provided by [the plaintiff].  In sum, [the defendant] represented to the airlines that their past expertise would be used in formulating competitive bids and providing an identical product").

The positions of Account Manager for Varonis and Account Executive for AppOmni are substantially similar and, in both positions, Jarvis is responsible for sourcing new clients and business opportunities and nurturing existing client and partner relationships to drive sales of SaaS security solutions.  See Pomeroy Decl. ¶¶ 18-19, 52-53.  Indeed, AppOmni describes itself as the "leader in SaaS Security".[1]  See https://appomni.com/, last accessed February 26, 2023; Complaint

---

[1] AppOmni, like Varonis, is in the business of analyzing and managing risks to enterprise users' data.  See, e.g., 44% of Cloud Privileges Are Misconfigured, Security Magazine, dated August 3, 2021, *available at* https://www.securitymagazine.com/articles/95781-of-cloud-privileges-are-misconfigured.

¶¶ 70-73.  In other words, Jarvis is working for AppOmni in a function comparable to that that he performed for Varonis, impermissibly advancing products which compete with the very same products Jarvis worked to advance against competitors, such as his current or prospective employer, AppOmni.  Under such circumstances, disclosure is *inevitable*.  See Payment Alliance Int'l, Inc. v. Ferreira, 530 F. Supp. 2d 477, 482 (S.D.N.Y. 2007) ("even if [defendant] acted with the best of intentions, he may unintentionally transmit information gained through his [former employment] during his day-to-day contact with his new employer.") (quotation omitted); Estee Lauder, 430 F. Supp. 2d at 174.

### 3.    Jarvis's use and disclosure of Jarvis's confidential information will inflict irreparable harm

Absent an injunction, Jarvis will be able to use Varonis' own confidential information against it, which will cause Varonis to lose business and goodwill.  Jarvis's violation of the covenants "threaten to cause [Varonis] irreparable harm by luring away the business of a number of long-term [Company] clients."  Johnson Controls, 323 F. Supp. 2d at 532.  Indeed, it is well-settled that the loss of "future sales, goodwill and entire client accounts" cannot be easily quantified.  Uni-World Capital, L.P. v. Preferred Fragrance, Inc., 73 F. Supp. 3d 209, 236 (S.D.N.Y. 2014) (the loss of client relationships and good will can only be remedied by monetary damages in unusual circumstances); Ticor, 173 F.3d at 69 ("it would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come"); see also Mickey's Linen, 2017 WL 3970593, at *18 (it is "precisely the difficulty of pinning down what business has been or will be lost that makes an injury 'irreparable.'").

AppOmni has developed its own SaaS data security products and it is positioned to compete and take business away from Varonis's SaaS products.  See Complaint ¶¶ 72-73.  By

joining AppOmni, Jarvis is servicing Varonis' direct competitor.  Id. ¶ 71.  It is highly foreseeable, if not inevitable, that he has used and/or will use Varonis's confidential information to counter the very products about which he acquired detailed knowledge and whose sales initiatives he helped formulate and direct.

Jarvis's violation of his non-competition, non-solicitation, and non-interference restrictive covenants "threaten to cause [Varonis] irreparable harm by luring away the business of a number of long-term [ ] clients." Johnson Controls, 323 F. Supp. 2d at 532.  Through its employment of Jarvis, who had access to and/or was instrumental in the development of confidential business information regarding the sale and development of Varonis's products, AppOmni has access to, and Jarvis inevitably will use, confidential information about Varonis's products and product roadmap (into which he has visibility of at least one year), Varonis's clients and prospects' plan's needs, preferences, and deal terms, as well as strategies to respond to competitors and secure business relationships.  The disclosure or misuse of Varonis's confidential information will disadvantage Varonis and damage its market position, which Varonis developed through considerable investment of time, effort, and money.

If Jarvis is allowed to use "even the information in [his] head" that is based on Varonis' confidential information, Jarvis (and AppOmni) will have an "unfair advantage by avoiding the costly process of actually discovering" this information and be able to design products and pitch customers and business partners using same.  See Vendavo, Inc. v. Long, 397 F. Supp. 3d 1115, 1142 (N.D. Ill. 2019) (noting that if former employee is allowed to use "even the information in [his] head" that is based on former employer's confidential information, new employer will have an "unfair advantage by avoiding the costly process of actually discovering" this information). The harm to Varonis would be unquantifiable.

Jarvis has put himself in an unfair, advantageous position to challenge and harm Varonis's

business on behalf of his new employer, in violation of the Employment Agreement.  See IBM v. Papermaster, No. 08 Civ. 9078 (KMK) 2008 WL 4974508, at *8 (S.D.N.Y. Nov. 21, 2008) ("Because [defendant] has been inculcated with some of IBM's most sensitive and close-guarded technical and strategic secrets, it is no great leap for the Court to find that Plaintiff has met its burden of showing a likelihood of irreparable harm.").  As a result of Jarvis's conduct and inevitable disclosure and use of confidential information, Varonis is likely to lose customer and business relationships and the goodwill built up over the years, neither of which can be measured with monetary damages.  See e.g., Uni-World Capital, 73 F. Supp. 3d at 236.

**B.      Varonis Is Likely to Succeed on the Merits and, At The Very Least, Can Demonstrate a Sufficient Serious Question Going to the Merits to Make Its Claims Fair Grounds For Litigation**

### 1.      Choice of Law

"When a federal district court sits in diversity, it generally applies the law of the state in which it sits, including that state's choice of law rules." In re Coudert Bros. LLP, 673 F.3d 180, 186 (2d Cir.2012).  New York courts generally honor choice of law provisions.  See Village of Cannon v. Bankers Trust Co., 920 F. Supp. 2d 520, 526 (S.D.NY. 2006).  Section 13 of the Employment Agreement provides that the "Agreement will be governed by the laws of the State of New York without regard to New York's conflict of law rules."  As such, New York law applies.

### 2.      Breach of Contract

The Employment Agreement is fully and properly enforceable and the subject of clear violations by Jarvis.  New York courts apply a "three-part test to determine the reasonableness, and ultimately the enforceability, of anti-competitive employee agreements."  MasterCard Int'l Inc. v. Nike, Inc., 164 F. Supp. 3d 592, 601 (S.D.N.Y. 2016) (citing BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 388–89 (1999)).  Under this test, "[a] restraint is reasonable only if it: (1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not

impose undue hardship on the employee, and (3) is not injurious to the public." Id.  The restrictive covenants easily satisfy these tests.

### a.    Jarvis breached his Employment Agreement

Under New York law, the elements of a breach of contract claim are "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." See Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 62 (2d Cir. 2011).   There are three enforceable covenants in this case that prohibit Jarvis from engaging in activities in competition with Varonis for one year.

The Employment Agreement bars Jarvis, for one year after his separation, from working in competition to Varonis's business or products.  See Employment Agreement § 7(A)(i).  Jarvis's position at AppOmni is similar to his position at Varonis, performing substantially similar functions, for the benefit of a company that offers SaaS security management products and services similar to those offered by Varonis, e.g., establishing and nurturing client and partner relationships to drive sales of SaaS security solutions that perform and/or have many similar functions or features.  Id. §7(A)(iii) (prohibiting Jarvis from working for, advising, or participating or affiliating with 'any business whose business, products or operations are in any respect competitive (including by planning or proposing to be competitive) with or otherwise similar to the Company's business").

There is no way for Jarvis to be employed by AppOmni or to do anything for the Company without breaching Jarvis's non-compete obligation.  Thus, by agreeing to joining AppOmni's employ and to the extent such employment may have already commenced, Jarvis has breached the Employment Agreement and as established *supra*, the harm to Varonis is irreparable and immeasurable.  See id. §§ 7(A) & 12(C).

Similarly, there is no way for Jarvis to perform his duties for AppOmni without breaching his obligations refrain from interfering with Varonis's business relations.  <u>See</u> Pomeroy Decl. ¶ 16.  The purpose of Jarvis's relationships with channel partners as Account Executive or Account Manager generally is to promote his employer's product to gain greater access or priority over the products of competitors or to gain access to partners' customers base or prospects that partners have identified as potentially being in the market for SaaS security solutions.  <u>Id.</u> ¶¶ 18-21, 52-53, 58.  Whether directly pitching directly against Varonis or indirectly impacting Varonis by using his relationships with partners to advance AppOmni and its products so that partners in turn favor and/or sell to their clientele, Jarvis would necessarily breach the covenant prohibiting him from soliciting, inducing, or encouraging (or attempting to solicit, induce, or encourage)  any party to "not conduct business with the Company, divert away any business from the Company, or to cease, limit, or reduce the level of business conducted between such business relationship and the Company" or, at the very least, breach his obligation to refrain from doing anything that "in any way interfere[s] or attempt[s] to interfere with the Company's relationship with any party or existing or prospective counterparty".  <u>See id.</u> § 7(B)(3)(ii), (iii).

Indeed, Jarvis's function is to direct business to AppOmni and, thus, away from Varonis.  Accordingly, insofar as Jarvis's employment is allowed to proceed, by pitching AppOmni's products to clients or prospective, or assisting AppOmni to do so, Jarvis necessarily violates the non-interference provision.  <u>See id.</u>  It is also hard to imagine how Jarvis can advance AppOmni's sales of SaaS security management solutions without breaching the non-solicitation covenant barring Jarvis, for one year, from contacting any of Varonis's customers or any party that "ha[s] used, inquired of, or been solicited for [Varonis's] products at any time during the two-year period preceding [Jarvis's] termination".  <u>Id.</u> § 7(B)(1).  Those actions, in part, are part of an Account Executive's functions.  For all of the above-mentioned reasons, there is no way for Jarvis's

14

employment with AppOmni can go forward without breaching or *threatening* to breach the Employment Agreement -- which, Jarvis admitted would cause irreparable injury to Varonis and entitle Varonis to injunctive relief.  See id. § 12(C).

### b.    The Employment Agreement is enforceable

#### (1)    The Employment Agreement is reasonable in scope and duration

At the outset, Jarvis acknowledged that the restrictive covenants are "necessary to protect the Company Confidential Information."  Employment Agreement § 7(C).  Jarvis also agreed that "The time, geographic and scope limitations of my restrictive covenant obligations are *fair and reasonable* in all respects, especially in light of the Company's need to protect Company Information and the international scope and nature of the Company's business."  Employment Agreement § 7(C) (emphasis added).  Jarvis should be bound to the acknowledgments he made, which were given in consideration for his employment with the Company.  See Haber, 188 F.3d at 49; Estee Lauder, 430 F. Supp. 2d at 174.

The Agreements are narrowly tailored to cover, for one year, only employers engaged in a business that competes with Varonis's business, which, here, is specifically SaaS data security solutions (for which Varonis invested substantial sums to acquire a company to enhance its capabilities and offerings).  Similarly, the restrictions on solicitations merely prohibit Jarvis from doing anything that disadvantages or diverts business away from Varonis -- for just one year.  As such, Jarvis remains free to engage in a wide array of business activity as the covenants do not prevent Jarvis from being gainfully employed or from working in his profession for any other employer which does not compete with Varonis.

In other words, Jarvis is not being subjected to an undue hardship which would impede this Court from issuing an appropriate restraining order.  See Oliver Wyman, Inc. v. Eielson, 282 F.

15

Supp. 3d 684, 697 (S.D.N.Y. 2017) ("New York courts have routinely found one-year restrictions to be reasonable."); Locke v. Tom James Co., No. 11 Civ. 2961, 2013 WL 1340841 (S.D.N.Y. Mar. 25, 2013) (enforcing prohibition against former employee from competing or soliciting former employer's customers for two years in any territory where he previously conducted business); Cardwell v. Thermo Fischer Scientific, No. 09 Civ. 7809, 2010 WL 3825711, at *7 (S.D.N.Y. Sept. 23, 2010) (a one year restriction is reasonable under the circumstances" where employer was "engaged in the business of development, manufacture, sales and marketing" and employee "would be privy to an abundance of information about [employer]")).

Further, the geographic scope of post-employment restriction is reasonable to the extent it is necessary to protect a party's legitimate interests. "[T]he reasonableness of a covenant's scope is not determined by reference to physical distances, but by reference to the area in which a covenantee has an interest the covenants are designed to protect." Weichert Co. of Penn. v. Young, 2007 WL 4372823, at *4 (Del. Ch. Dec. 7, 2007). The restricted geographic scope is reasonable because the Company's business is global and Jarvis had responsibility for advancing those products, which Varonis sells internationally (and against which Jarvis is now competing).

### (2)    The Employment Agreement protects Varonis's legitimate business interest

"Assuming a covenant by an employee not to compete surmounts its first hurdle, that is, that it is reasonable in time and geographic scope, enforcement will be granted to the extent necessary (1) to prevent an employee's solicitation or disclosure of trade secrets, (2) to prevent an employee's release of confidential information regarding the employer's customers, or (3) in those cases where the employee's services to the employer are deemed special or unique." Ticor, 173 F.3d at 70. An employer has a legitimate business interest securing "protection against misappropriation of the employer's trade secrets or of confidential customer lists, or protection

from competition by a former employee whose services are unique or extraordinary." BDO Seidman, 93 N.Y.2d at 389; see also Mercer, 307 F. Supp. 3d at 351 ("Restrictions on the use of trade secrets and confidential information in the solicitation of prospective clients can be justified based on the need to protect that information.").

An employer also "has a legitimate interest in preventing former employees from exploiting or appropriating the goodwill of a client or customer, which had been created and maintained at the employer's expense, to the employer's competitive detriment." BDO Seidman, 93 N.Y.2d at 392; see also Mercer, 307 F. Supp. 3d at 349 ("an employer … has a legitimate interest in protecting client relationships developed by an employee at the employer's expense"); Devos, Ltd. v. Record, No. 15 CV 6916 (AYS), 2015 WL 9593616, at *12 (E.D.N.Y. Dec. 24, 2015) (same). "[T]his interest may extend to clients with whom the former employee had not had a relationship during employment, but whom he solicited using confidential information belonging to the employer." Devos, 2015 WL 9593616, at *12.

As Jarvis acknowledged when he signed the Employment Agreement, the non-disclosure, non-competition, non-solicitation, and non-interference covenants are necessary to protect Varonis's confidential information and business – in other words, to prevent Jarvis from using or disclosing confidential information for any purpose other than performing his duties for Varonis's benefits.   As Jarvis also acknowledged, the Company's confidential information is vital to its success and the disclosure of misuse of such information places Varonis at a serious competitive disadvantage and damages the Company. See Employment Agreement § 7(C).

Jarvis accessed and used Varonis's confidential information to perform his duties, i.e., to grow the Company's business by securing client relationships and placing Varonis products with clients and prospective clients, as well as building and nurturing relationships with business partners to advance Varonis products.  To that end, as Account Manager, Jarvis had access to

proprietary information about Varonis's products and clients and had responsibility for customer and partner relationships that were a significant source of sales for Varonis.  See Complaint ¶¶ 29-32.  Jarvis played an integral role in driving the development and sale of Varonis's products and, in connection with that function, had to learn about competitors' products and position Varonis's products against them to grow the Company's business, including in the market of SaaS security solutions.  Id. ¶ 25.  In this capacity, Jarvis acquired substantial knowledge about Varonis's product plans, as well as plans for SaaS security solutions (against which AppOmni competes), e.g., the timetable for the development and/or roll out of Varonis's products and features and the marketing and sales plans, and has invisibility into Varonis's product roadmap for at least the next twelve months.  Id. ¶¶ 41-43, 48-50.  In sum, Jarvis has full knowledge of Varonis's strategy on how it will win the market for SaaS security solutions; there is little he does not know.

Jarvis was also the source of confidential information aggregated by Varonis.  By virtue of his position interfacing directly with clients and partners, Jarvis was the channel through which Varonis learned about clients' feedback about the Company's products, technical issues or bugs, features that clients did not use or want or wanted and/or would need but did not exist in Varonis's offerings.  Id. ¶¶ 45-47.

Without an injunction, whether purposefully or not, Jarvis will inevitably use such information against Varonis to service his personal interests and advance the business interests of AppOmni, which is competing with Varonis for prospective clients of SaaS data security solutions.  See Papermaster, 2008 WL 4974508, at *9 ("it is likely that [employee] inevitably will draw upon his experience and expertise in microprocessors and the 'Power' architecture, which he gained from his many years at IBM, and which Apple found so impressive, to make sure that the iPod and iPhone are fitted with the best available microprocessor technology and at a lower cost"); Inflight Newspapers, Inc. v. Magazines In-Flight, LLC, 990 F. Supp. 119, 125 (E.D.N.Y. 1997) (disclosure

18

was likely where the defendant "provide[d] an identical product to its customers as previously provided by [the plaintiff].").  Through Jarvis, AppOmni would be able to improve or design competing products or features with the technical, business, and customer information that Jarvis acquired at Varonis -- and thereby take business away from Varonis's products and place Varonis at a competitive disadvantage.  Even Jarvis's knowledge about, for example, what products or features that Varonis's customer base did not use or need could be used to advantage AppOmni, e.g., by advising AppOmni what features did not merit the dedication of resources to develop given the return on investment Varonis's confidential information would enable AppOmni to avoid the significant risk and enormous costs associated with time-consuming trial and error, and the potentially large losses associated with developing products or features and selling in a way that does not meet the needs of the market or one that is priced or positioned incorrectly.  See Vendavo, 397 F. Supp. 3d at 1142 (employee's knowledge of confidential information may benefit new employer with the "unfair advantage [of] avoiding the costly process of actually discovering" information).  As such, Jarvis should be precluded, for only one year, from providing services on behalf of AppOmni, a direct competitor advancing competing products.

        **(3)**      **The Employment Agreement does not cause undue hardship and balancing of the equities favor enforcement**

The potential harm to Varonis is great if the Court denies its request for injunctive relief. Solely because of his employment with Varonis, Jarvis is able to interfere with Varonis's client and business relationships and opportunities, as well as unfairly damage its competitive position, for the very reason Jarvis had access to such information and relationships.  Varonis merely seeks to maintain the status quo and prevent Jarvis from breaching his contractual obligations and engaging in unfair business practices.  The restrictive covenants do not prevent Jarvis from working; they only bar Jarvis, for just one year, from competing or providing services to a company

19

that competes with Varonis, so as to ensure that Jarvis does not disclose or use Varonis's confidential and trade secret information for his personal benefit or the benefit of his new employer.

By contrast, the potential harm to Jarvis is minimal, as Jarvis implicitly concedes – Jarvis acknowledges that his obligations under the Employment Agreement are necessary to protect Varonis's confidential information, see Employment Agreement § 7(C), and "consent[s] to the issuance of an injunction" as "any breach of threatened breach of such an agreement will cause irreparable injury."  See id. § 12(D); see also id. § 2(B) (acknowledging Company's legitimate business interests in its confidential information, which gives the Company an advantage).  Jarvis is and will remain free to work on products which do not conflict with Varonis and has the opportunity to work at any number of companies where his work would not implicate Varonis's confidential information.  See id. § 7(C) (Jarvis acknowledging that "[he] will not be precluded from gainful employment by abiding by the restrictions in this Agreement.")).  Varonis is simply trying to protect itself from having its investment in Jarvis being used to its detriment.

If the Court allows Jarvis's employment with AppOmni on whose behalf Jarvis will be able to advance AppOmni's products in competition with the same Varonis products he was responsible for promoting *just weeks earlier*, it is inevitable that Jarvis will use the information he acquired, even if residing only in his head, solely by virtue of his employment with Varonis -- Jarvis has no prior experience with data security products and no other source of relevant knowledge.  In other words, every value or contribution Jarvis is providing or will provide AppOmni derives solely from his accumulation of almost a decade's worth of experience and knowledge at Varonis.  Allowing Jarvis to compete with Varonis using Varonis's confidential information will undermine the investment of substantial time, resources, and goodwill that Varonis made in its client and business relationships and products.  As such, the balance of the equities decidedly weigh in favor

20

of Varonis.  See Marsh USA Inc. v. Schuhreimen, 183 F. Supp. 3d 529, 536-37 (S.D.NY. 2016).

For the reasons *supra*, the irreparable injury that Varonis will sustain absent an award of injunctive relief far outweighs any possible harm to Jarvis.  See Intertek Testing Servs., N.A., Inc. v. Pennisi, 443 F. Supp. 3d 303, 346 (E.D.N.Y. 2020) (finding equities favored injunction where "the Court would be enforcing contractual obligations to which the individual defendants freely agreed, and in exchange for which they received the benefits of their employment with plaintiff[]" and, absent injunction, "plaintiff will likely lose the confidentiality of its trade secrets and confidential information, its goodwill with longstanding clients, and the benefit of its bargain"); Cortland Line Holdings LLC v. Lieverst, No. 18 CV 307, 2018 WL 8278554, at * 9 (N.D.N.Y. Apr. 6, 2018) (balance of hardships favored the plaintiffs, who hired defendant with the understanding that he would not compete with the company for two years after leaving and would not use confidential company information to do so, because "[f]ailing to receive the benefit of its bargain would create a hardship to the Plaintiffs"); Mercer, 307 F. Supp. 3d at 354-55  (balance of equities tipped decidedly in plaintiff's favor because plaintiff merely sought "to maintain the status quo for its current clients and prevent Defendants from breaching their contractual obligations … and engaging in tortious and unfair business practices.").

### c.    Granting injunctive relief is in the public interest

Denying injunctive relief rewards Jarvis's breach of contract and misconduct.  Enforcing the covenants at issue in this case will not harm the public.  "If anything, the public interest would be advanced by such an injunction because it would encourage parties to abide by their agreements." Uni-World Capital, L.P. v. Preferred Fragrance, Inc., 73 F. Supp. 3d 209, 237 (S.D.N.Y. 2014).  By granting Varonis's motion for a temporary restraining order, this Court would further the public interest in the integrity and enforceability of contracts and the promotion of business ethics.

21

If the public has any interest in the issues surrounding the present case, it lies in preserving the enforceability of contracts.  See JTH Tax, Inc. v. Sawhney, No. 19 Civ. 4035, 2019 WL 3051760, at *7 (S.D.N.Y. July 11, 2019) ("injunctive relief would serve the public interest by ensuring that reasonable restrictive covenants into which the parties voluntarily entered are enforced").  Here, the public's interest includes, "protecting trade secrets and customer goodwill and ensuring that legally enforceable contracts are in fact enforced."  Avaya, Inc. v. Ali, No. 12-10660 (DJC), 2012 WL 2888474, at *9 (D. Mass. July 13, 2012).  Granting the requested relief fulfills the public's expectation that the terms of contracts will be enforced, and that confidential information and customer goodwill will be protected.  Denying the relief sought can only frustrate those legitimate expectations.  Accordingly, the public interest favors granting the relief sought.

Further, the time-limited non-compete and non-solicitation agreements in this case would not restrain competition. AppOmni developed, marketed, and sold its SaaS security solutions before its employment of Jarvis and it will be able to continue doing so without employing Jarvis – for one year – to provide services similar to the services Jarvis provided Varonis and involving the sale and development of products with which Jarvis was involved and about which he obtained confidential information during his almost ten years of employment at Varonis.

## II.    VARONIS SHOULD NOT BE REQUIRED TO POST BOND

Rule 65(c) of the Federal Rules of Civil Procedure confers on the Court broad discretion to the court to set the amount of the bond or even dispense with the bond altogether.  See Doctor's Assocs., Inc. v. Stuart, 85 F.3d 975, 985 (2d Cir.1996).  In cases where the non-movant has not shown a likelihood of harm, the court may properly set no bond.  See id.  In this case, Jarvis cannot establish that he will be harmed if a bond is not posted.  To the contrary, Jarvis acknowledged that a breach or *threatened breach* of the Employment Agreement or any agreement regarding confidential and trade secret information, non-competition, non-solicitation, and non-interference

22

will cause irreparable injury; as such, Jarvis "consent[s] to the issuance of an injunction." <u>See</u> Employment Agreement §12(D) (all caps formatting removed).

Because Jarvis acknowledged that Varonis will suffer irreparable harm from a breach or threatened breach of his restrictive covenants and consented to an injunction to prevent such harm, Varonis should post no bond.

## III.   THE COURT SHOULD GRANT EXPEDITED DISCOVERY

Courts in this district have often granted expedited discovery in cases involving restrictive covenants.  <u>See</u>, <u>e.g.</u>, <u>Uni-World Capital</u>, 73 F. Supp. 3d at 241 (expedited discovery permitted in non-compete case); <u>Nebraskaland, Inc. v. Brody</u>, No. 09 Civ. 9155 (DAB), 2010 WL 157496, at *1 (S.D.N.Y. Jan. 13, 2010); <u>DAG Jewish Directories, Inc. v. Y & R Media, LLC</u>, No. 09 Civ. 7802 (RJH), 2010 WL 46016, at *1 (S.D.N.Y. Jan. 7, 2010).  Here, Varonis seeks the prompt deposition of Jarvis concerning his application to or recruitment by AppOmni, his hiring at AppOmni, and the nature of his work or anticipated work at AppOmni, as well as the production of limited documents.  The production should include all communications between Jarvis and anyone acting in concert with him or on his behalf and any Varonis customer or business partner with whom Jarvis worked or with whom Jarvis shared and/or obtained confidential information during his employment.  It is impossible for Varonis to ascertain the full extent Jarvis's violation of the Employment Agreement without deposition testimony and document production.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Varonis Systems, Inc. respectfully requests that the Court grant its motion for a temporary restraining order, preliminary injunction, and expedited discovery, and for such other and further relief as the Court deems just and proper.

Date:   February 27, 2023
        New York, New York

                                            _____/s/_____
                                            A. Michael Weber
                                            Shawn M. Clark
                                            Gary Moy
                                            LITTLER MENDELSON, P.C.
                                            900 Third Avenue
                                            New York, New York 10022.3298
                                            212.583.9600

                                            *Attorneys for Plaintiff Varonis Systems, Inc.*